# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT A. ELLIOT, et al., | ) | |
| | ) | |
| Plaintiff, | ) | No. 14 C 9625 |
| | ) | |
| v. | ) | Judge Norgle |
| | ) | |
| MISSION TRUST SERVICES, LLC, | ) | Magistrate Judge Cole |
| CHRISTOPHER C. FINLAY, THE | ) | |
| CORPORATION TRUST COMPANY, | ) | |
| and MICHAEL T. HOSMER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

### A.

The curious case of the North Carolina apartment complex continues, far from its home in the Tarheel State, here in the Northern District of Illinois. The current dispute arises out of proceedings in the Western District of Texas, where Hugh Caraway resides. Mr. Caraway's firm, IRI, was engaged by the Mission Trust plaintiffs to perform a financial analysis of the apartment complex. Mr. Caraway is IRI's CEO. He didn't perform the work, but he did sign off on it. [14-9625, Dkt. #1-1, at 20-21]. The Mission Trust defendants issued a subpoena from this court to Mr. Caraway, requiring that he produce documents and appear for a deposition in San Antonio, Texas.

Mr. Caraway was served on October 7, 2014, the day before he was to leave for a family vacation in Puerta Vallarta, Mexico.[1] The subpoena demanded he produce documents on October

---

[1] The Mission Trust Defendants claim to have served Mr. Caraway by certified mail on September 19, 2014. But it was sent to the incorrect address for Mr. Caraway's business [14-9265, Dkt. #13-4, at 2]; http://internacionalrealty.com/, and was signed for by someone other than him on October 6, 2014. [14-9265, Dkt. # 13-4]. "[P]roper service requires . . . *personal delivery* of the subpoena." *In re Dennis*, 330 F.3d 696,

(continued...)

17 and sit for a deposition on the 27th. Prior to that, Mr. Caraway hadn't heard anything from the Mission Trust defendants, and he hadn't heard anything about the lawsuit. He obviously didn't have sufficient time to deal with the subpoena before catching an early flight with his family the next morning. [14-9625, Dkt. #1-1, at 21-22]. He returned on October 14th, and the next day emailed counsel for the Mission Trust defendants, informing him that he had a conflict for the deposition date scheduled and also needed some time to engage counsel. He asked if things could be rescheduled for early November. [14-9625, Dkt. # 1-1, at 69-70].

Apparently in no hurry, counsel for Mission Trust defendants did not respond for six days. Finally on October 21st, he sent an email, steadfastly refusing to budge. [14-9625, Dkt. # 1-1, at 69]. Here is his response in its entirety: "We are in receipt of your e-mail below. We understand that your e-mail related to the subpoena for production of documents. Please confirm that we will be proceeding with your testimonial deposition on Monday, October 27, in San Antonio pursuant to the subpoena served on you." *Id.* An hour later, Mr. Caraway responded, saying: " I meant both dates. I should have counsel engaged today or tomorrow and they will be getting in contact with you." *Id.*

Three days later, on October 24, 2014, Mr. Caraway's newly retained counsel went to federal court in San Antonio seeking an order quashing the subpoenas for: (1) failure to provide a witness fee under 28 USC §1821; (2) failure to allow a reasonable time to comply under Fed.R.Civ.P. 45(d)(3); and (3) undue burden. The judge in the Western District of Texas referred the matter to a magistrate judge. The Mission Trust defendants – who had been in such a hurry they could not put Mr. Caraway's compliance off a week or ten days – were no longer so pressed for time, for in

---

¹(...continued)
704 (5th Cir. 2003)(emphasis supplied).

addition to filing a response to Mr. Caraway's motion to quash, they filed a motion to transfer the subpoena matter here, claiming there were "exceptional circumstances" under Fed.R.Civ.P. 45(f). [Dkt. #14].[2]

According to the Mission Trust defendants, the "exceptional circumstances" were: (1) "a pattern of gamesmanship to delay discovery that ha[d] been orchestrated by [the Mission Trust] Plaintiffs" that had resulted in sanctions – which had nothing to do with the merit of Mr. Caraway's motion to quash – and (2) the Northern District of Illinois was "very familiar" with the facts and background of the case – a circumstance that is almost invariably true in every case. [14-9625, Dkt. # 14, at 6].

The magistrate judge recommended that the district court transfer the matter here, and the district court accepted the recommendation. The subpoena matter was transferred to the Northern District of Illinois on December 2, 2014.[3] It did not come to me until March 9. *See infra* at 5. In the interim, the Mission Trust defendants did nothing to obtain a ruling on so that they could take the deposition they insisted had to proceed in less than 14 days from the original issuance of the

---

[2] The transfer motion was certainly inconsistent with the Mission Trust defendants' insistence on the need for an immediate compliance with the dates in the subpoena. Obviously, a transfer to the Northern District of Illinois would entail, in all likelihood, a referral to a magistrate judge who would have to issue a report and recommendation, to be followed by the filing of objections that would have to be reviewed by the district court *de novo*. In short, the motion to transfer was clearly not the act of a party for whom time was of the essence.

[3] Ironically, the District Court for the Western District of Texas is in the singular position of at least having a connection with Mr. Caraway, who resides in the District. None of the parties in this case, the property at issue, nor the trust that was the impetus of these proceedings have any connection whatsoever with the state of Illinois. [13-7770, Dkt. # 1]. Venue hinges flimsily on a forum selection clause in the trust document. But, the Mission Trust Defendants dissolved the trust on February 25, 2014, five months after the plaintiffs filed suit to force them to comply with their obligations under it.

subpoena in November 2014.[4]

**B.**

Under Fed.R.Civ.P 45(f), an enforcing court may transfer a motion to quash a subpoena to the issuing court if the enforcing court finds there are "exceptional circumstances." The Advisory Committee notes explain that, in determining whether exceptional circumstances are at play, the court's:

> prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts. Transfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

Thus, the second reason offered by Mission Trust defendants, familiarity with the case is, at least in the circumstances of this case, essentially irrelevant since Mr. Caraway's objections – fees, time for compliance, burden – could have been resolved without any familiarity with the core proceedings. It is also clear that the court in Texas was gulled by the first reason the Mission Trust defendants offered: the Mission Trust plaintiffs engaging in gamesmanship and having been sanctioned. At the time of the transfer in early December 2014, the Texas court had no way of knowing that it was the Mission Trust defendants who had engaged in overarching gamesmanship by concealing from Judge Norgle that they had dissolved the trust, and thus he was proceeding

---

[4] On April 2, 2015 the Mission Trust defendants, pursuant to Local Rule 78.5, filed a motion requesting a "decision" on the motion to quash. As the motion conceded, courtesy copies of the motions and briefs were not provided to me as required by Local Rule 5.2(f) until March 31, 2015, and only after a request by me. *See infra* at 5, Section C for the chronology of events leading up to that motion.

without jurisdiction over the plaintiff's claims. *See Elliott v. Mission Trust Services*, _F.Supp.2d_, 2015 WL 1138265 (N.D.Ill. March 11, 2015).[5] Beyond this, it is difficult to see what the claim of gamesmanship and noncompliance with discovery by the plaintiff had to do with the merit of *Mr. Caraways's* motion to quash.

The desideratum of Fed.R.Civ.P. 45(f) is the protection of non-parties from undue burdens. And under Fed.R.Civ.P. 45(c), Mr. Caraway was assured he would not have to travel more than 100 miles from his home or business in order to comply with a subpoena. Yet, now, as a consequence of the Mission defendants' Motion to Transfer, not only has compliance with the subpoena been substantially delayed beyond dates that could have been reasonably agreed upon back in the Fall of 2014, but Mr. Caraway is now required to be litigating in a court over 1000 miles away from his place of business and residence. Of course, he won't have to travel here himself, but the point is that the transfer accomplished by the Mission Trust defendants makes a mockery of the rules.

## C.

Be that as it may, when the subpoena dispute arrived here in early December, it was assigned a new case number (14-9625) and was assigned to Judge Wood. At Judge Norgle's request, the Executive Committee reassigned it to him on January 5, 2015, as it was clearly associated with the core case, 13-7770. [*See* 14-9625, Dkt. #31]. Judge Norgle terminated the subpoena case, 14-9625, on March 3, 2015. [14-9625, Dkt. # 34]. He then referred the motion to quash to me on March 9, 2015. [14-9625, Dkt. #39]. And so the referral appeared to be on a closed case. As a result of that docketing confusion, I was not made aware of this matter until I received a call on March 31, 2015,

---

[5] The Mission Trust defendants have not objected to that Opinion, and the 14 days they had in which to do so have passed. Fed.R.Civ.P. 72(a).

5

not from the Mission Trust defendants, but from Mr. Caraway's counsel, Lauren Valkenaar. At my request, and pursuant to Local Rule 5.2(f), she sent me the relevant and quite extensive filings on the subpoena matter the next day. While it was Mr. Caraway's motion, the Mission Trust defendants did nothing following the transfer here to obtain a ruling on the motion, even though they had been adamant that Mr. Caraway's subpoena had to be complied within less than 14 days from the date of its issuance in 2014.

As already noted, Mr. Caraway's basic objections to the subpoena are straightforward and their resolution requires little, if any, familiarity with the case before Judge Norgle. They are to be resolved with due regard for the protections afforded persons subjected to subpoenas, especially non-parties, under Fed.R.Civ.P. 45. *See, e.g., Cusumano v. Microsoft Corp.,* 162 F.3d 708, 717 (1st Cir.1998)*; Exxon Shipping Co. v. United States Dept. of Interior,* 34 F.3d 774, 779 (9th Cir.1994); *United States v. Amerigroup Illinois, Inc.*, 2005 WL 3111972, *4 (N.D.Ill. 2005).

The determination of what constitutes a reasonable time for compliance with a subpoena directed to a non-party is committed to the sound discretion of the district court and will, of course, vary with the circumstances *Matter of Grand Jury Subpoena,* 739 F.2d 1354, 1359 (8th Cir.1984). So, too, is the decision to quash a subpoena. *Ott v. City of Milwaukee*, 682 F.3d 552, 556 (7th Cir. 2012). Discretion denotes the absence of a hard and fast rule. *Langnes v. Green,* 282 U.S. 531, 541 (1931); *Rogers v. Loether,* 467 F.2d 1110, 1111–12 (7th Cir. 1972)(Stevens, J.).

It requires that a court act "with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes,* 282 U.S. at 541. An abuse of discretion occurs when no reasonable person could agree with the district court's decision. *Adams v. City of Indianapolis,* 742 F.3d 720, 727 (7th Cir. 2014); *Cincinnati Life*

*Ins. Co. v. Beyrer,* 722 F.3d 939, 953 (7th Cir. 2013). *See also CSC Holdings, Inc. v. Redisi,* 309 F.3d 988, 993 (7th Cir.2002)(court will overturn a discretionary decision relating to subpoena "only if: '(1) the record contains no evidence upon which the court could have rationally based its decision; (2) the decision is based on an erroneous conclusion of law; (3) the decision is based on clearly erroneous factual findings; or (4) the decision clearly appears arbitrary.'").

That is a difficult showing to make. Indeed, on a virtually identical set of facts, two decision makers can arrive at opposite conclusions, both of which can constitute appropriate exercises of discretion and both be affirmed on appeal. *Mejia v. Cook County, Ill.,* 650 F.3d 631, 635 (7th Cir. 2011); *United States v. Banks,* 546 F.3d 507, 508 (7th Cir. 2008). *Cf. United States v. Bullion,* 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.) ("The striking of a balance of uncertainties can rarely be deemed unreasonable....").

### 1.

First, there is the matter of a witness fee. The Mission Trust defendants attached a $98.36 check to their subpoenas, which they say represents the necessary witness fee for two days ($40 per day for two days) and $18.36 for transportation ($0.56 per mile for two separate round trips of 16.4 miles each). *See* 28 USC §1821. But Mr. Caraway lives in LaVernia, Texas [14-9265, Dkt. #1-1, at 20], which is 35 miles from the site given for compliance with the subpoena. So, that is two separate round trips of 70 miles each, for a total mileage fee of $78.40, or more than 4 times what the Mission Trust defendants provided. The Mission Trust defendants explain that they calculated the mileage, not from Mr. Caraway's home, but from his office, which they claim is "the only address known to [them]." [14-9265, Dkt. # 13, at 8]. They claim that this represents a reasonable effort to comply with the rules. [14-9265, Dkt. # 13, at 8].

7

It's not apparent how. The Mission Trust defendants reveal no efforts they made, if any, in determining Mr. Caraway's home address. "[W]hen the subpoenaing party makes no attempt to calculate and tender at least a reasonably estimated mileage allowance, he plainly violates rule 45(b)(1) and leaves us with no factual basis from which to review the court's decision." *In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003). We have nothing from the Mission Trust defendants to show they made any such attempt, not even the minimal effort of conducting an internet search.[6] This is reason enough to grant Mr. Caraway's motion to quash. *In re Dennis*, 330 F.3d 696, 705 (5th Cir. 2003); *CF & I Steel Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 713 F.2d 494, 496 (9th Cir. 1983).[7]

Next is the timing of the subpoena and the burden imposed on Mr. Caraway. A district court may quash or modify a subpoena if it fails to allow a reasonable time for compliance or subjects the deponent to an undue burden. Fed.R.Civ.P. 45(d); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993 (7th Cir. 2002). The determination as to what constitutes a reasonable time in any particular case must be arrived at by a consideration of all its elements which affect that question. *Twin-Lick Oil Co. v. Marbury,* 91 U.S. 587, 1875 WL 17954, 1 (1875). Mr. Caraway is, as already noted, a non-party to this case – a significant circumstance – and presumably had no knowledge of the proceedings prior to the subpoenas. At least the record contains no proof that he did. The subpoenas were served on

---

[6] The Mission Trust defendants advance no argument that the disjunctive phrasing of Fed.R.Civ.P. 45(c)(1), which sets the limits of subpoena power at "within 100 miles of where the person resides, is employed, or regularly transacts business in person," permitted them to calculate mileage either from Mr. Caraway's home or office. Accordingly, any such argument is waived. *United States v. Baines*, 777 F.3d 959, 963 (7th Cir. 2015); *Kmart Corp. v. Footstar, Inc.*, 777 F.3d 923, 929-30 (7th Cir. 2015). Moreover, that section does not deal with calculation of mileage but rather with the limits of the subpoena power.

[7] It should not go unnoticed that in the time since Mr. Caraway pointed out the Mission Trust defendants' error in calculation, there is nothing to suggest they have made any attempt or offer to correct it. *Cf. WhitServe LLC v. Computer Packasges, Inc.*, 2013 WL 6169280, 3 (D.Conn. 2013)(court did not quash subpoena for inadequate fee where issuing party took prompt action to cure deficiency).

Mr. Caraway on October 7, 2014, and compliance – document production and deposition – was demanded for October 17, 2014, and October 27, 2014, respectively. Mr. Caraway was leaving for a family vacation in Puerta Vallarta, Mexico, on an early flight the next morning. Even if he had not been leaving, Fed.R.Civ.P. 45(d)(2)(B) suggests that 14 days is the benchmark for time for compliance;[8] and courts have found that fourteen days from the date of service is presumptively reasonable. *See Tri Investments, Inc. v. Aiken Cost Consultants, Inc.*, 2011 WL 5330295, 1 (W.D.N.C.2011).[9] Mr. Caraway would have had just 10 days. In this case, that's inadequate. *See e.g., AngioScore, Inc. v. TriReme Medical, Inc.*, 2014 WL 6706898, 1 (N.D.Cal. 2014)(9 days inadequate); *Dixon v. Greyhound Lines, Inc.*, 2014 WL 6474355, 4 (M.D.La. 2014)(9 days including 3-day holiday weekend inadequate); *Thomas v. IEM, Inc.*, 2008 WL 695230, at *3 & n. 10 (M.D.La. 2008) (15 days was inadequate, especially considering the Christmas holiday fell within those 15 days); *Hernandez v. City of Corpus Christi*, 2011 WL 2194254, at *1 (S.D. Tex. 2011) (quashing subpoena *duces tecum* that gave 10 days for compliance); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 327 (N.D. Ill. 2005)(ten business days deposition notice unreasonable in complex litigation); *Mann v. Univ. of Cincinnati*, 824 F.Supp. 1190, 1202 (S.D.Ohio), *aff'd,* 152 F.R.D. 119

---

[8] The Rule allows objections to a subpoena to be filed "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed.R.Civ.P. 45(d)(2)(B). As such, a 14-day period for compliance might be regarded as the "default" time period. *See Anderson v. Dobson*, 2006 WL 3390631, at *3 (W.D.N.C. Nov. 22, 2006)(holding that 10 days was not an adequate time for compliance and noting that "the usual and customary 14 day objection period for the witness to move to quash the subpoena would to have even run by the time of the proposed depositions.").

[9] The rule allows objections to a subpoena to be filed "before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed.R.Civ.P. 45(d)(2)(B). As such, a 14-day period for compliance might be regarded as the "default" time period. *See Anderson v. Dobson*, 2006 WL 3390631, at *3 (W.D.N.C. Nov. 22, 2006) (holding that 10 days was not an adequate time for compliance and noting that "the usual and customary 14 day objection period for the witness to move to quash the subpoena would not have even run by the time of the proposed depositions").

(S.D.Ohio 1993), *aff'd,* 1997 WL 280188, 5, n.5 (6th Cir. 1997)(requiring compliance with subpoena in less than fourteen days deemed unreasonable). The short time for compliance in this case is made more onerous by the Mission Trust defendants' refusal to be flexible as to rescheduling.

When Mr. Caraway suggested postponing things a week or so until early November, counsel for the Mission Trust defendants refused by essentially ignoring the request. Significantly, in their motion to transfer, the Mission Trust defendants inaccurately informed the court in the Southern District of Texas that Mr. Caraway didn't offer them any alternate dates [14-9265, Dkt. # 14, at 9], even though he clearly asked the Mission Trust defendants to "give [him] some dates in early November to re-schedule." [14-9265, Dkt. # 1-1, at 70].

Counsel for Mr. Caraway entered the picture and immediately attempted to reach some understanding with counsel for the Mission Trust defendants. But as of October 23, 2014, no agreement could be reached. [14-9625, Dkt. # 1-1, at 2]. Along the way, counsel for Mr. Caraway asked about dates between November 11-14, but counsel for the Mission Trust defendants refused and demanded compliance with the October 27th date in the subpoena. [14-9625, Dkt. # 15-6, at 1-2]. Mr. Caraway's counsel then filed the motion to quash, emailing a copying to counsel for the Mission Trust defendants. [14-9625, Dkt. # 15-2, at 1]. Immediately thereafter, counsel for the Mission Trust defendants called Mr. Caraway's attorney and left this voice message:

> Yeah, uh, Lauren...Uh, we do not agree that you can simply not show up at a deposition. But setting that aside, we are going to take the deposition of Hugh Caraway on the offered day of November 10th, it's the only day we can possibly make work, its very busy inconvenience [sic] to us and our schedule uh that we think is unnecessary but we are gonna do it and we are confirming this with you and my local counsel in Illinois with this day. You've offered Hugh Caraway on November 10. We are taking that offer and we are for that reason not coming out on Monday. We will have a confirmation to you. My cell is... if you have any questions about this. Thanks for your cooperation.

[14-9625, Dkt. #15-4, at 1]. Significantly, there is no evidence at all that the November 10th date was ever on the table. All that Mr. Caraway had offered was an early November date. While Mr. Caraway's submissions on this matter are supported with sworn statements and email chains, the Mission Trust defendants' submission offers nothing but the unsupported statements in its brief. But that is not evidence. *See*, *INS v. Phinpathya,* 464 U.S. 183, 188–89 n. 6 (1984); *United States v. Chapman,* 694 F.3d 908, 914 (7th Cir.2012); *United States v. Diaz,* 533 F.3d 574, 578 (7th Cir.2008); *Campania Mgmt. Co. v. Rooks, Pitts & Poust,* 290 F.3d 843, 853 (7th Cir.2002).

Given what we've learned, Mr. Caraway's motion to quash was well-taken. The time for compliance was inadequate given his travel plans and the fact that he had to engage counsel who then had to acquaint themselves with a case to which their client was not a party. The subpoena was couched in terms that necessitated the recipient familiarize himself with the core case – it referred repeatedly to the "subject matter of the Complaint and Counterclaim." [14-9625, Dkt. # 1-1, at 47-52; 60-64]. The Mission Trust defendants rejected out of hand Mr. Caraway's initial offer of early November dates. They rejected a subsequent offer of November 11-14 dates. They were recalcitrant, strident, and overbearing. Only under the pressure of the motion to quash in Texas did they offer November 10th – which they claimed was "the only day we can possibly make work....."[10]

The fact that they reference *their* busy schedules and inconvenience is unpersuasive. [*See* 13-7770, Dkt. # 190]. It is the Mission Trust defendants' subpoena and it is their Counterclaim. Mr. Caraway is not a party. The Mission Trust defendants are the kind of subpoenaing party that the First Circuit must have had in mind in *Cusumano*:

> Although discovery is by definition invasive, parties to a law suit must accept its

---

[10] They claim Mr. Caraway offered the date – that wasn't true.

travails as a natural concomitant of modern civil litigation. Non-parties have a different set of expectations. Accordingly, concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.

162 F.3d at 717.

The Mission Trust defendants made absolutely no legitimate effort to accommodate Mr. Caraway's schedule. Apparently, foremost in their minds was the convenience of their attorneys. This is not a factor that enters into the Fed.R.Civ.P. 45 calculus, which concerns itself with protecting the recipient of a subpoena not the issuer from undue burdens. *See, e.g., Alexander v. Jesuits of Missouri Province*, 175 F.R.D. 556, 559 (D.Kan. 1997). Generally speaking, convenience of counsel ought never to trump convenience of an individual, especially a non-party individual. *Hannah v. Wal-Mart Stores, Inc.*, 2014 WL 110950, 4 (D.Conn. 2014)("... convenience of counsel is less compelling than any hardship to the witnesses."); *Devlin v. Transportation Communications Intern. Union*, 2000 WL 28173, 4 (S.D.N.Y. 2000)(same). In any event rescheduling a deposition is not an "undue" burden on the issuing lawyers – at least not on this record.

## 2.

Mr. Caraway is also entitled to an award of attorneys' fees. Rule 45(d)(1) allows for the imposition of sanctions, including reasonable attorney fees, on the party issuing the subpoena when that party who failed to take reasonable steps to ensure the subpoena would not result in an undue burden. Fed.R.Civ.P. 45(d)(1); *American Soc. of Media Photographers, Inc. v. Google, Inc.*, 2013 WL 1883204, 6 (N.D.Ill. 2013); *Jallali v. Nova Southeastern University*, 2012 WL 2368322, 2 (N.D.Ill. 2012); *Mick Haig Productions, e.K. v. Does*, 2011 WL 5104095, 4 (N.D.Tex. 2011). Good faith in issuing a subpoena is not sufficient to avoid sanctions under Rule 45(c)(1) if a party has

issued the subpoena in violation of the duty imposed by that Rule. *Google, Inc*., 2013 WL 1883204, 6; *Builders Ass'n of Greater Chicago v. City of Chicago*, 2002 WL 1008455, 3 (N.D.Ill. 2002); *Liberty Mutual Ins. Co. v. Diamante*, 194 F.R.D. 20, 23 (D.Mass.2000).

Fees are appropriate here because there is nothing that demonstrates the Mission Trust defendants took reasonable steps to ensure the subpoena would not result in an undue burden. They steadfastly refused to accommodate Mr. Caraway's very reasonable request for a short postponement that was measured in days and which would have comfortably fit within the discovery close date.[11] The reason given was that their attorneys were "very busy" and November 10th was the only "possible" day that they could be available to take the deposition. There is nothing in this record that would remotely support the kind of demand for expedition insisted on by the Mission Trust defendants.

Moreover, the Mission Defendants inflexibility in dealing with Mr. Caraway and his lawyers stands in rather stark contrast to their request for transfer following Mr. Caraway's motion to quash in Texas. [14-9625, Dkt. #14]. That strategy was certain to result in potentially lengthy delays, while a reasonable continuance of the subpoena to a date in November as Mr. Caraway requested or early December would have resulted in the deposition going forward promptly.[12] Second, they never called chambers to inquire as to the progress of this proceeding, despite the fact that, as a result of the transfer in early December, 2014, and some subsequent docketing confusion, more than five months had elapsed since the date they insisted on deposing Mr. Caraway in late October. By this

---

[11] While discovery was closing on December 29, 2014 [13-7770, Dkt. #89], there was ample time to meet that deadline by taking the deposition in November or early December.

[12] However rapid the judicial resolution of the subpoena issue might have been, common sense dictated that it would have taken far more time than simply granting Mr. Caraway time to prepare with his counsel for the deposition.

time, the December 29, 2014 discovery cutoff set by Judge Norgle had expired.

In short, the course chosen by the Mission Trust defendants was infinitely less preferable than making the reasonable accommodation Mr. Caraway initially sought for his deposition. It has resulted in needless expense to everyone, and delayed the resolution of the deposition dispute long after it could have been resolved amicably and to everyone's satisfaction in November or early December of 2014 had the Mission Trust defendants acted reasonably and responsibly.[13]

## CONCLUSION

Mr. Caraway's motion to quash the subpoena [Dkt. #1] is GRANTED. Mr. Caraway may file an appropriately supported petition for fees, with the proviso that the parties must comply with Local Rule 54.3.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 4/7/15

---

[13] Judge Shadur has attributed "the decline in the quality of legal life" to the "sharp increase in the number and proportion of hard-ball litigators...who make it a point not to be accommodating," and "who tend to be intransigent even though it would cost them or their clients little or nothing to act differently." Milton Shadur, *Hardball Litigators*, 20 LITIGATION 21 (1993). Unfortunately, the problem is not new. *See, e.g.,* John Grady, *Trial Lawyers, Litigators and Clients' Costs*, 4 LITIGATION 5 (Spring 1978)*;* Wayne Brazil, *The Adversary Character of Civil Discovery: A Critique and Proposals for Change,* 31 Vand.L.Rev. 1295-96, 1304, 1310 (1987);William W. Schwarzer, *The Federal Rules, the Adversary Process, and Discovery Reform*, 50 U.Pitt.L.Rev. 703, 704, 705, 715 (1989);  Learned Hand, The Deficiencies Of Trials to Reach the Heart of the Matter, 105 ( Lectures on Legal Topics (The MacMillan Co.1926)(quoted in *Jackson v. N'Genuity Enterprises Co.,* 2010 WL 4928912, 1 (N.D.Ill. 2010).